**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No.  2:06-CR-161 PS |
| | ) | |
| DONALD L. COCHRAN | ) | |

**OPINION AND ORDER**

What Donald Cochran did over the Internet last summer was undeniably a bit disturbing. By repeatedly exposing himself and fondling his erect penis into a webcam for a person he believed to be 13 years old, it was not likely that any jury was going to acquit him.  But whether he violated the federal statute with which he was charged is not so simple a question.  The statute in question – Title 18, United States Code, Section 2422 – is written in a way that only a lawyer could love.  It prohibits individuals from using the Internet to persuade or entice children to engage in prohibited sexual activity.  The problem is that "sexual activity" is not defined in the statute.  The only limitation on that term is that the conduct must amount to a violation of a "criminal offense" including state law offenses.  The issue is further complicated in this case because the state law that Cochran was alleged to have violated does not sensibly fit the federal statute that incorporates it.

Cochran moved for a judgment of acquittal at the close of the evidence arguing that his conduct did not meet the elements of the statute.  I took the matter under advisement and submitted the case to the jury who returned a verdict of guilty.  The issue presents a close call. However, after reviewing the trial transcript and exhibits, I conclude that there was sufficient evidence that Cochran attempted to entice or persuade a person he believed to be under the age

of 14 to engage in prohibited sexual activity.  And while this prosecution involves a somewhat unorthodox application of § 2422(b), Cochran's conduct fell within the language of the statute.  Accordingly, the Motion for Judgment of Acquittal is denied.

## FACTUAL BACKGROUND

Unlike most criminal trials, the facts in this case were totally undisputed.  Cochran admitted doing everything that the government claimed.  Essentially, his defense was "So what?" – nothing that he did violated the statute with which he was charged.  In the current posture, I must view the evidence in the light most favorable to the government, which is how I recount it below.  *United States v. Alhalabi*, 443 F.3d 605, 613 (7th Cir. 2006).

In late July 2006, the United States Secret Service set up a sting operation, Project Safe Childhood, to catch child predators operating online.  (Tr. Vol. 2 at 21.)  On July 31, Cochran visited an "Indiana Romance" chatroom hosted by Yahoo.com, and initiated a conversation with a person with the user identification of "ashley12_km".  (*Id*. at 26-30.)  During the course of their chats, Ashley repeatedly told Cochran that she was 13 years old.  In reality, "Ashley" was Detective Sergeant Carrie Costello of the Purdue University Police Department, who participated in the sting in an undercover capacity.  (*Id*. at 20-21.)  Cochran chatted with Ashley seven times over the course of several weeks.  (*Id*. at 34.)  Cochran initiated the conversation six out of the seven times.  (*Id*.)

At trial, the government read all of the transcripts of the chats between Cochran and Ashley in their entirety.  Cochran used sexual innuendo and explicit sexual language in several of the chats, and on at least four occasions, Cochran exposed and fondled his penis in front of his webcam for Ashley to see.  (Ex. 2-8.)  The government introduced the video footage of Cochran

2

exposing or fondling himself, which Agent Costello had captured electronically.  (Ex. 9.)  A summary of the pertinent parts of the chats is given below.[1]

**July 31, 2006 chat**

In their first chat together, Cochran asked Ashley if she had a webcam or a picture of herself other than the one that appeared on her online profile.  (Tr. Vol. 2 at 41.)  Cochran volunteered that he had a webcam.  (*Id*. at 42.)  Ashley asked to see Cochran, but then said that she was having problems receiving images from Cochran's webcam.  (*Id*. at 42-43.)  Cochran explained to Ashley how she could change her Yahoo settings to get the images, and when that did not work, he suggested that perhaps Ashley's mother put up "parent control" settings to block such content.  (*Id*. at 43-44.)  He then told her how to get around antivirus software.  (*Id*. at 44.)

As the chat progressed, Cochran told Ashley that she was "sweet."  (*Id*. at 51.)  He also introduced sexual innuendo into the chat by mentioning that it was hot outside and that it was "even hot running around naked."  (*Id*. at 46.)  He told Ashley that he liked to play "strip pool" – a reference to playing billiards in the buff – but that he was not very good at it, and that is why he ends up having "to strip a lot."  (*Id*. at 52.)  Cochran also sent Ashley "emoticons" – animated icons making various expressions – such as a kiss.  (*Id*. at 52-53.)  He then asked to see Ashley

---

[1] The Internet chats between Cochran and the person he believes is Ashley are full of grammatical and typographical errors as well as acronyms for common phrases used by people chatting on the Internet (such as "brb" for "be right back," "lol" for "laugh out loud," and "omg" for "Oh, my God.").  When Detective Sergeant Costello and Special Agent Wade Gault read the transcripts aloud (with Gault reading the part of the Defendant), the court reporter transcribed their conversation, eliminating many of the errors and acronyms.  To facilitate reading of the chats, where portions of the chats have been quoted in this opinion, the Court relies on the trial transcript rather than the actual copies of the chats themselves.

on camera when she got her webcam back.  (*Id*. at 56.)  However, Cochran was concerned that Ashley's mother might discover that they were chatting together so he warned her that she should delete their chats and when she said she did not know how to do that, he gave her directions on how to change her settings so future chats would not be retained.  (*Id*. at 58-59.)

Cochran eventually volunteered to strip for "Ashley."  (*Id*. at 60-61.)  He proceeded to pull his shorts down and expose his penis to the webcam.  (*Id*. at 61-63; Ex. 9a.)  Ashley reminded him that he was 13 years old, and he replied that that was not a problem.  (*Id*. at 62-63.)  Before the chat ended Cochran reminded Ashley to clean out her old chats and not let her mother see the webcam images of him.  (*Id*. at 66-68, 71.)

**August 1, 2006 chat**

In their next chat, Cochran expressed an interest in seeing Ashley on camera so he could see her in person.  (*Id*. at 89.)  He asked her if she liked what she saw the day before.  (*Id*. at 92.)  When Ashley asked if he does this with every girl he meets, he answered that there had been "a few." (*Id*. at 92-93.)  He reassured her, however, that she was special and a "very sweet and pretty girl."  (*Id*. at 93.)

**August 4, 2006 chat**

During this conversation, Cochran again asked Ashley whether she still liked what she saw, an obvious reference to his having exposed himself in an earlier chat.  (*Id*. at 99.)  He then sent her a number of emoticons, including one that he said is a "French kiss" emoticon.  (*Id*.)  According to the agent who was doing the undercover chatting, Cochran was "fondling his penis again" during this chat.  (*Id*. at 103.)  Then Cochran rubbed a can of soda on his chest, explaining that "it feels good" and it makes his "headlight pop out."  (*Id*. at 103-04.)  He asked if

4

Ashley ever played with her nipples, and she responded, "no, why?"  Cochran then explained that nipples are sensitive, and "that['s] why guys suck them."  (*Id*. at 105.)

Eventually, Cochran exposed his penis to Ashley again.  (*Id*. at 106.)  He then explained to Ashley the concept of a male orgasm.  (*Id*. at 107.)  While exposing his penis to Ashley, he told her to "wait till you see one shoot . . . (and) what comes out at the end."  (*Id*.)  He told her that the "harder the (penis) gets . . . it will eventually explode."  (*Id*.)  Evidently, Cochran was concerned about the nature of the chats that he was having with Ashley because he asked her once again whether she was erasing the chats that they were having and she assured him that she was.  (*Id*. at 108)  He was worried about what might happen if her "mom finds out."  (*Id*.)  Cochran continued to exposed his penis to Ashley throughout this chat.  (*Id*. at 108-09.)

**August 19, 2006 chat**

In this chat, Cochran made a joke about Viagra and explained that it is prescribed to help "men who can't get hard-ons without help."  (*Id*. at 117-18.)  Cochran told Ashley that an "erection  . . . is where [a] penis is so hard it [sic] stiff."  (*Id*. at 118.)  Cochran exposed himself briefly at first, then later fondled himself on camera.  (*Id*. at 118-20.)  Cochran only quickly exposed himself at first because his daughter was in the other room and he did not want to get "caught."  (*Id*. at 118-19.)  When Ashley asked whether she was "special," Cochran responded that she was.  (*Id*.)  As Cochran masturbated, he explained that the more he moved his penis, the bigger it gets.  (*Id*. at 120.)  He explained that it gets bigger until it will eventually "explode," and "it releases pressure and cum will come out."  (*Id*.)  He explained that this is called "ejaculation."  (*Id*.)  Cochran explained to Ashley that when "cum . . . get(s) in a woman, that is what makes babies . . . ."  (*Id*.)  Cochran explained that masturbation is "safe."  (*Id*.)  He said that

5

he would "show you" (apparently meaning that he would masturbate to orgasm), but his daughter was around. (*Id.*) (Indeed, Cochran's young daughter can be seen behind him in some of the videos). Cochran asked Ashley if she saw "how big it was" and that "now since I stopped, it went down" – a reference to his fondling his penis to erection. (*Id.*)

* * *

At trial, Cochran conceded that all of the chats were accurate, and that he was the person shown on the webcam video clips. He did not offer any evidence. At the close of all the evidence, Cochran moved for judgment of acquittal, or in the alternative, for a new trial. I granted the motion with respect to one of the Indiana statutes upon which the government relied, but I reserved ruling on the motion on the other statute and submitted the case to the jury, as permitted under Fed. R. Crim. P. 29(b). (*Id.* at 191, 196-98). The jury found Cochran guilty, and he timely renewed his motion for judgment of acquittal following the guilty verdict, along with a motion for a new trial.

It is conceded that Cochran never traveled anywhere in an attempt to have sex with Ashley. In fact, it is conceded that he never tried to meet her at all. Thus, the government contends that Cochran committed the crime – if one was committed at all – during the online chats themself and not because of some other action taken by Cochran.

## DISCUSSION

### I. Motion for Judgment of Acquittal.

Federal Rule of Criminal Procedure 29(b) requires a court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." A court may only grant a motion for judgment of acquittal if the record is devoid of evidence from which

6

a rational jury could find that a defendant is guilty beyond a reasonable doubt. *United States v. Brown*, 328 F.3d 352, 355 (7th Cir. 2003); *United States v. Benjamin*, 116 F.3d 1204, 1206 (7th Cir. 1997). Since the bar to overturning a guilty verdict is high, "a sufficiency of the evidence challenge rarely succeeds." *United States v. Hill*, 187 F.3d 698, 700 (7th Cir. 1999).

The government charged Cochran with one count of violating 18 U.S.C. § 2422(b), coercion and enticement of a minor. That statute prohibits individuals from using the Internet to attempt to "knowingly persuade[ ], induce[ ], entice[ ] or coerce[ ] any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense . . . ." *Id.* The underlying "criminal offense" at issue in this case – according to the government's bill of particulars – was an Indiana offense named "Vicarious Sexual Gratification; Fondling in the Presence of a Minor." Ind. Code 35-42-4-5(c). That statute prohibits a person from "knowingly or intentionally . . . touch[ing] or fondl[ing] the person's own body . . . in the presence of a child less than fourteen (14) years of age with the intent to arouse or satisfy the sexual desires of the child or the older person . . . ." *Id.*

To establish a violation of § 2422(b), the government had to prove the following four elements: (1) the use of a facility of interstate commerce; (2) to knowingly persuade, induce, entice, or coerce, or to attempt to persuade, induce, entice or coerce; (3) any individual who is younger than 18; (4) to engage in any sexual activity for which any person can be charged with a criminal offense. *United States v. Brand*, 467 F.3d 179, 201-02 (2d Cir. 2006). Defendant concedes that the Internet is a facility of interstate commerce and that he used it. He further concedes that a defendant can be convicted of attempting to violate § 2422(b) even if the attempt is made toward someone whom defendant believes is a minor, but who is actually a police

7

officer posing as a minor.  Thus, the dispute in this case centers around whether there was sufficient evidence on the second and fourth elements.

As a back drop to this discussion, I am mindful of the rule of lenity, which instructs that ambiguity in the meaning of a statutory provision should be resolved in favor of the defendant. *United States v. Turcotte*, 405 F.3d 515, 535 (7th Cir. 2005).  But the rule of lenity is to be used sparingly and is only applicable where there is a grievous ambiguity or uncertainty in the language and structure of the statute.  *Id*.  The rule of lenity serves to help defendants when there is an obvious and legitimate ambiguity in a statute that makes it so unclear that it can be fairly stated that the defendant was not put on notice of what the law prohibits.  *United States v. Palmer*, 864 F.2d 524, 527-28 (7th Cir. 1988).  Parsing language in statutes is what courts routinely do.  But just because a statute needs construction does not mean that the rule of lenity applies.  *Id*.

It's worth noting that there is a difference between "principles of lenity" – that is, having mercy on a defendant – and the "rule of lenity."  *United States v. McEntire*, 153 F.3d 424, 438, n. 16 (7th Cir. 1998).  Approximately two weeks before the events in this case took place, the Adam Walsh Act became effective which, among other things, increased the mandatory minimum for violations of § 2422(b) from five years to ten.  So there is a hefty penalty to Cochran if his conduct is found to be in violation of the statute.  But those concerns cannot come into play when deciding if the statute is ambiguous, which I find that it is not.

**A.  Sufficiency of the Evidence on the Persuade, Induce and Entice Element**

I must first consider whether a reasonable jury could have found beyond a reasonable doubt that Cochran attempted to either persuade, induce or entice Ashley.  "Section 2422(b) does

8

not prohibit all communications with a minor; nor does it prohibit all communications that relate to illegal sexual activity. It only proscribes communications that actually or attempt to knowingly 'persuade,' 'induce,' 'entice' or 'coerce' a minor to engage in illicit sexual activity." *United States v. Tykarsky*, 446 F.3d 458, 482 (3d Cir. 2006). An "attempt" to violate § 2422(b) is an attempt to persuade, not an attempt to engage in the underlying sex act. *United States v. Thomas*, 410 F.3d 1235, 1244 (10th Cir. 2005) ("Section 2422(b) requires only that the defendant intend to entice a minor, not that the defendant intend to commit the underlying sexual act"); *United States v. Bailey*, 228 F.3d 637, 639 (6th Cir. 2000) (same).

I did not instruct the jury on the meaning of the terms "persuade," "induce," or "entice. These are common words that do not need to be defined for the jury. Indeed, neither party requested that they be further defined. At least one court has chosen to define these terms. *See Thomas*, 410 F.3d at 1245. However, the parties in this case chose to rely on the jury's understanding of the ordinary meanings of those words. Other courts have found this approach permissible under this same statute. *See United States v. Dhingra*, 371 F.3d 557, 562 (9th Cir. 2004) (in upholding the constitutionality of § 2422(b), concluding that "the terms 'persuade,' 'induce,' 'entice' and 'coerce,' as used in § 2422(b), have a plain and ordinary meaning that does not need further technical explanation.").

The evidence is clear that Cochran was attempting to induce, entice or persuade Ashley. First, Cochran explained to Ashley how she could receive the webcam images that he was broadcasting; he told Ashley to turn on her own webcam; he told her how to get around parental controls and antivirus software; he told her how to delete their chats so that her mom could not recover them; he repeatedly told her that she was "sweet" and "special"; he told her that he liked

9

to"strip"; he sent her emoticons of french kisses; he explained how masturbation works; he explained to Ashley that nipples are sensitive and told her that that was why they were aroused during sexual activity; he described in lurid detail the mechanics of a male orgasm; and he exposed himself and repeatedly fondled and masturbated into his webcam and then asked Ashley if she "liked what she saw."

When viewing this evidence in the light most favorable to the government, it is clear that Cochran was attempting to "persuade" and "induce" Ashley.  Indeed, evidence that a grown man told a 13 year-old girl to turn on a webcam so she could watch him masturbate – when viewing this evidence in the light most favorable to the government – would be sufficient to show that he was attempting to "persuade" or "induce" her.

It is also clear that Cochran was attempting to "entice" Ashley by trying to arouse her. Cochran repeatedly exposed himself to Ashley and fondled his erect penis in front of her. While it could be argued that he did these things not to entice Ashley but for his own gratification, it just as easily could be viewed the other way.  Juries are here to resolve these competing views of the evidence.  In any event, the most compelling evidence for the government that Cochran was trying to entice Ashley is the fact that he asked her on at least two occasions whether she "liked what she saw" – referring to his exposing himself.  Why else would Cochran ask Ashley this unless he was trying to entice her?  And why else would he explain in vulgar terms what an orgasm feels like and then tell her that she was "nice" and "pretty" and "special"?  A reasonable jury could have concluded that these were all efforts to "entice" Ashley.  *See United States v. Brand*, 467 F.3d 179, 195 (2d Cir. 2006) (defendant's use of sexual innuendo could be construed as an effort to entice); *United States v. Angle*, 234 F.3d 326, 332 (7th Cir. 2000) (conviction

10

under § 2422(b) upheld where defendant attempted to entice minor by telling him he loved him, offering him gifts or money in exchange for his address, and repeatedly expressing a willingness to travel to meet him, even though defendant never actually set up a meeting).

### B. To Engage in Any Sexual Activity in Violation of a Criminal Offense

The government had to prove that Cochran attempted to induce, entice or persuade Ashley "to engage in . . . any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b). Thus, the question is whether there was evidence that Cochran persuaded Ashley to engage in "sexual activity." Cochran told Ashley how to activate the webcam so that she could see him fondle himself. If watching him masturbate is a "sexual activity for which any person can be charged with an offense," then the evidence is clear that Cochran persuaded her to engage in that activity.

The statute at issue extends broadly to any attempt to induce, persuade or entice a minor to engage in "*any* sexual activity" that "*any* person" can be charged with under federal or state law. *Id.* (emphasis added). The underlying criminal offense that Cochran was charged with violating was an Indiana offense named "Vicarious Sexual Gratification; Fondling in the Presence of a Minor." Ind. Code 35-42-4-5(c). That statute prohibits a person from fondling himself in the presence of a 13 year-old with intent to arouse or satisfy the sexual desires of the child or the older person. Ind. Code 35-42-4-5(c)(3). There is no question that a reasonable jury could have concluded that Cochran violated this Indiana statute by repeatedly fondling himself in the presence of "Ashley" through the webcam. Cochran essentially concedes as much. (*See* Def.'s Mem. Supp. Mot. for J. of Acquittal at 12.)

The more difficult question is whether the acts that form the basis for the commission of

11

the Indiana offense of Vicarious Sexual Gratification amounts to "any sexual activity" as that term is used in the federal statute. 18 U.S.C. § 2422(b). The term "sexual activity" is not defined in the statute. Section 2422 is contained in Chapter 117 of the federal criminal code. In other places in Chapter 117 Congress chose also to prohibit "illicit sexual conduct" with children. *See* 18 U.S.C. § 2423(f). The phrase "illicit sexual conduct" is specifically defined to include contact with sex organs, penetration, and intentional touching of the genitalia. *Id.* (adopting these definitions from 18 U.S.C. § 2246). By contrast, the phrase "sexual activity" as defined in § 2422 has not been so limited by Congress. In fact, the only definition in Chapter 117 of the phrase "sexual activity" is in § 2427 which states that the "the term 'sexual activity for which any person can be charged with a criminal offense' includes the production of child pornography . . . ." *Id.* No other definition is given in Chapter 117.

It is true that the term "sexual act" – as opposed to "sexual activity" – is defined in a different chapter of the criminal code. Section 2246, which is part of Chapter 109A of the criminal code, defines "sexual act" as one of several specific forms of physical contact with either the victim's or the defendant's genitalia. However, there is nothing in the text of the statute that would lead one to believe that Congress intended to limit the phrase "sexual activity" in § 2422(b) – which appears six times in Chapter 117 – to the definition of "sexual act" in § 2246. All indications are to the contrary, since Congress did choose to specifically define the term "illicit sexual conduct" in Chapter 117. *See* 18 U.S.C. § 2423(f). In the absence of any definitions to the contrary, I presume that Congress meant what it said when it prohibited "*any* sexual activity for which *any* person can be charged with a criminal offense." 18 U.S.C. § 2422(b) (emphasis added).

12

In this case the "sexual activity for which any person [could] be charged with a criminal offense" was Indiana Code § 35-42-4-5(c), which prohibits a person from "knowingly or intentionally . . . touch[ing] or fondl[ing] the person's own body . . . in the presence of a child less than fourteen (14) years of age with the intent to arouse or satisfy the sexual desires of the child or the older person . . . ." Nothing in the Indiana statute would indicate that "presence" required physical presence in the same room, rather than presence through visual perception. And while it is somewhat awkward to read § 2422(b) together with Indiana Code § 35-42-4-5(c) because such a reading makes it a crime to induce or persuade a minor "to engage in" the sexual activity of "fondling in the presence of a minor" – that is what the jury found that Cochran did, and I must respect the jury's considered judgment.

Finally, it's worth noting that the government could have elected to prosecute Cochran for attempting to transfer obscene matter to an individual under the age of 16, which carries a maximum sentence of 10 years, 18 U.S.C. § 1470, or for sending obscene images to an individual under the age of 18 over the Internet, which carries a maximum sentence of 2 years, 47 U.S.C. § 223(d)(1). These obscenity statutes have been used on several occasions to prosecute an individual who fondled himself or masturbated in view of a webcam. *See United States v. Williams*, 26 Fed. Appx. 787, 789 (10th Cir. 2001) (unpublished disposition); *United States v. Jenkins*, 2007 WL 1087337, at *1 (N.D. Ga. Apr. 5, 2007); *Chilleme v. United States*, 2006 WL 1174277, at *7 (N.D. Ohio May 3, 2006); *United States v. Spurlock,* 386 F. Supp. 2d 1072, 1075-76 (W.D. Mo. 2005); *United States v. Diehl*, 2006 WL 1976339, at *1 (A.F. Ct. Crim. App. June 15, 2006). In several of those cases, the defendant sought to meet the minor for sexual activity, and in those cases, the defendant was additionally charged with violations of

13

§ 2422(b) or § 2423(b).[2]

Nonetheless, the fact that the obscenity statutes overlap with § 2422(b) does not require reading § 2422(b) more narrowly. Indeed, the Supreme Court "has long recognized that when an act violates more than one criminal statute, the Government may prosecute under either so long as it does not discriminate against any class of defendants." *United States v. Batchelder*, 442 U.S. 114, 123-24 (1979) (citations omitted). Since the Court concludes that Cochran's conduct fell within the plain language of § 2422(b), and there is no suggestion that government discriminated against him in violation of the Equal Protection or Due Process clauses, *id.* at 123-24, the prosecutor was within his discretion in charging him under that statute.

**II. Motion for New Trial**

Federal Rule of Criminal Procedure 33(a) allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "A jury verdict in a criminal case is not to be overturned lightly, and therefore a Rule 33 motion is not to be granted lightly." *United States v. Morales*, 902 F.2d 604, 605 (7th Cir. 1990). "But if the judge

---

[2] *See Williams*, 26 Fed. Appx. at 788 (defendant who sent images of himself masturbating to a purported minor and arranged to meet her was charged under § 2423(b) and § 1470, but agreed to plead guilty to the obscenity charge in exchange for dismissal of the § 2423(b) charge); *Chilleme*, 2006 WL 1174277, at *7 (defendant, who admitted that he communicated with an officer posing as adult woman with a 12 year-old daughter, repeatedly told both the mother and the daughter that he wanted to have sexual intercourse with both of them, and masturbated four times in front of his webcam, pled guilty to violations of § 2422(b), § 2423(b) *and* attempting to transfer obscene matter to a person under 16, under § 1470); *Spurlock*, 386 F. Supp. 2d at 1075-76 (defendant pled guilty to violations of § 2422(b), § 2423(b), and § 1470 under facts similar to *Chilleme*); *Diehl*, 2006 WL 1976339, at *1 (defendant, who sent live images of him exposing his penis to a person he believed was a 14 year-old girl and sought to arrange a meeting with her, pled guilty to a violation of 47 U.S.C. § 223(d) and soliciting a minor to engage in "indecent sexual acts" in violation of the Uniform Code of Military Justice).

believes there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted – he has the power to set the verdict aside . . even if he does not think that he made any erroneous rulings at the trial." *Id.* (citation omitted). Defendant has moved for a new trial in the alternative to his motion for judgment of acquittal, but he does not set forth any basis for granting the motion. Indeed, given that Defendant essentially conceded the evidence at trial, it is difficult to understand the basis for any assertion that the trial was unfair. Having concluded that there was sufficient evidence to convict Cochran of enticement of a minor under § 2422(b), and that the statute unambiguously covers Cochran's online sexual conduct, the Court finds that there is no basis for granting Defendant's motion for new trial.

## CONCLUSION

The Motions for Judgment of Acquittal and for New Trial [DE 51] are DENIED.

**SO ORDERED.**

ENTERED: September 5, 2007

s/ Philip P. Simon<br>
PHILIP P. SIMON, JUDGE<br>
UNITED STATES DISTRICT COURT